KeyCite Yellow Flag - Negative Treatment
Distinguished by Bradway v. Town of Southampton, E.D.N.Y., December 1, 2011

362 Fed.Appx. 340
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals, Fourth Circuit.

Angelic BROWN, Individually and as Personal Representative of the Estate of Travone L. Bell, decedent; Trojan Bell, Individually and as Personal Representative of the Estate of Travone L. Bell, decedent, Plaintiffs-Appellants,
v.
Officer MIDDLETON, Individually; Officer Holt, Individually; Officer Kramitz, Individually; E. Bernardi, Officer, Individually; Detention Officer Brown, Individually; Al Cannon, Sheriff of Charleston County in his official and individual capacities, Defendants-Appellees,
and
Officer Valentine, Individually; Charleston County Detention Center; City of North Charleston Police Department, Defendants.

No. 08-1937.
|
Argued: Oct. 27, 2009.
|
Decided: Jan. 15, 2010.

**Synopsis**
**Background:** Representatives of deceased's estate brought § 1983 action against police department, sheriff, and officers, alleging defendants violated deceased's constitutional rights by failing to attend to his serious medical needs following his arrest. The United States District Court for the District of South Carolina, Margaret B. Seymour, J., entered summary judgment for defendants, and representatives appealed.

**Holding:** The Court of Appeals held that officers were not deliberately indifferent to deceased's medical needs.

Affirmed.

West Headnotes (1)

[1]     **Prisons**
        ⟵ Health and Medical Care

Arresting officers and detention center officer were not deliberately indifferent to serious medical needs of pretrial detainee who died after suffering myocardial infarction caused by ingesting cocaine; officers repeatedly asked detainee if he had swallowed any cocaine and he consistently denied doing so, and detainee acted normally while under observation.

3 Cases that cite this headnote

*341 Appeal from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, District Judge. (2:06-cv-02454-MBS).

**Attorneys and Law Firms**

**ARGUED:** Michele Patrao Forsythe, Michael W. Sautter, Query, Sautter, Gliserman & Price, LLC, Charleston, South Carolina, for Appellants. Robin Lilley Jackson, Senn, McDonald & Leinback, LLC, Charleston, South Carolina; Gordon Wade Cooper, Buyck Law Firm, Charleston, South Carolina, for Appellees. **ON BRIEF:** Stephanie P. McDonald, Senn, McDonald & Leinback, LLC, Charleston, South Carolina, for Appellees Officer Middleton, Individually, Officer Holt, Individually, Officer Kramitz, Individually, E. Bernardi, Officer, Individually; Darren K. Sanders, Buyck & Sanders, LLC, Mount Pleasant, South Carolina, for Appellees Detention Officer Brown, Individually, Al Cannon, Sheriff of Charleston County, in his official and individual capacities.

Before KING, Circuit Judge, HAMILTON, Senior Circuit Judge, and Anthony J. TRENGA, United States

District Judge for the Eastern District of Virginia, sitting by designation.

**Opinion**

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

**\*\*1** On February 18, 2005, approximately four and a half hours after being arrested and while still in custody, Travone Bell ("Bell"), age 16, suddenly collapsed into unconsciousness while taking a shower at the Charleston County Detention Center (the "Detention Center"). He received immediate medical attention and was taken to a nearby hospital. He died approximately ten days later without ever regaining consciousness. The underlying cause of his collapse was attributed to acute cocaine intoxication.

Following their son's death, Appellants Angelic Brown and Trojan Bell ("Appellants"), acting individually and as personal representatives of the Estate of Travone Bell, filed a claim under 42 U.S.C. § 1983 against the City of North Charleston Police Department (the "Department"), Al Cannon, the Sheriff of Charleston County, Officers Tony Middleton, Justin Holt, Alan Kramitz, Ethan Bernardi, George Valentine,[1] who were involved in their son's arrest, **\*342** and Officer Hans Brown, who processed their son at the Detention Center (collectively referred to as the "Appellees"). Appellants allege that Appellees violated their son's federal constitutional rights when his urgent medical needs were not attended to following his arrest on February 18, 2005. The District Court entered summary judgment against the Appellants. Because the evidence does not support a reasonable inference that Appellees had actual knowledge that Bell was in need of medical attention before his sudden collapse, we must affirm.

## I. Background

At approximately 12:30 a.m. on February 18, 2005, Officer Holt stopped a vehicle driven by Bell for speeding. Bell was arrested at the scene, handcuffed, and placed in the back of Officer Holt's police vehicle. Officers Middleton, Kramitz, Bernardi, and Schmidt arrived to provide back up and assistance.

During a search of Bell's vehicle, the officers found several empty plastic baggies in the driver's side door. There was no evidence that these baggies previously contained any material. Each officer asked Bell whether he was in possession of anything illegal, including drugs or guns, and Bell responded in the negative each time. Officers Bernardi and Middleton noticed that Bell appeared to have an object in his mouth and removed from Bell's mouth a baggie containing an off white substance, which field tested positive for crack-cocaine. The Appellants contend this baggie had holes in it and that the crack-cocaine in the baggie was moist from Bell's saliva at the time it was taken from his mouth,[2] while the Appellees maintain that Officer Middleton made the holes in the baggie himself in order to field test the substance inside, and the substance inside the baggie became moist from the saliva on the baggie's exterior during that procedure.

After removing the baggie from Bell's mouth, Officers Holt, Middleton, and Kramitz each asked Bell several times whether he had swallowed any drugs. Bell denied doing so each time, even after Officer Kramitz cautioned Bell that if he had swallowed any drugs, he needed to be treated and that he would not face any additional charges for narcotics that he had consumed. Bell was also offered immediate medical attention as well as the services of an ambulance, but Bell continued to deny swallowing any drugs or any need for medical attention. Bell did admit to smoking earlier in the day several marijuana cigars laced with cocaine, known as "blunts," but Bell appeared calm, acted in a normal manner, and carried on friendly conversation with the officers.

**\*\*2** Because Bell was being charged as an adult, he was transported to the South Precinct of the North Charleston Police Department to complete paper work and then to the Detention Center, where he arrived at 2:48 a.m. At the Detention Center, Bell was taken to the Juvenile Unit, where Officer Brown performed a strip search on Bell. Brown was provided with a copy of the incident report that referenced the drugs taken from Bell's mouth.[3] During **\*343** his processing of Bell, Officer Brown asked Bell if he had swallowed any drugs. Bell again denied swallowing drugs, but again admitted having smoked up to five cocaine laced marijuana cigars earlier in the day.

Officer Brown checked Bell's mouth for any additional hidden drugs, without finding any. He also observed that Bell was acting calm and compliant, without the abnormal behavior that is normally associated with cocaine use.

After Officer Brown's search, Bell was taken to the shower room, where he began taking a shower. At approximately 3:53 a.m., a little over an hour after his arrival at the Detention Center, Bell fell out of the shower stall and suffered a series of seizures that rendered him unconscious. The officers and medical staff immediately responded and summoned emergency medical services that transported Bell to nearby St. Francis Xavier Hospital emergency room. In the emergency room, Bell's urine tested positive for marijuana and cocaine, although no blood tests were conducted to determine the exact amount of drugs in his system. Bell never regained consciousness and died on March 1, 2005. The cause of death was listed as cerebral hypoxia due to subacute myocardial infarction secondary to acute cocaine intoxication.

## II. Procedural History/Standard of Review

On August 3, 2006, Appellants filed a complaint against Appellees in the Court of Common Pleas for Charleston County, South Carolina, alleging both federal claims under 42 U.S.C. § 1983 and state law claims pursuant to the South Carolina Torts Claims Act, S.C.Code Ann. §§ 15-78-10, *et seq.* On September 1, 2006, the Appellees removed the case to federal court. On July 22, 2008, the District Court granted the Appellees' motion for summary judgment and remanded the remaining state law claims after refusing to exercise supplemental jurisdiction. The Appellants have appealed the District Court's summary judgment ruling as to their Section 1983 claims. We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-prevailing party, here, the Appellants. *See Holland v. Washington Homes, Inc.,* 487 F.3d 208, 213 (4th Cir.2007).

## III. Analysis

Section 1983, by its own terms, prohibits constitutional violations under color of state law. In this case, Appellants claim that the Appellees violated their son's constitutional rights under the Fourteenth and Eighth Amendments when they failed to properly attend to his urgent medical needs following his arrest.

Persons within state police custody enjoy the protections afforded by the Fourteenth and Eighth Amendments, which include the right to obtain adequate medical care. *Martin v. Gentile,* 849 F.2d 863, 866 (4th Cir.1988) (explaining that the denial of medical care by state officials can give rise to claims under the Fourteenth Amendment's due process clause); *see also City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (holding that pretrial detainees have at least the same protections under the Fourteenth Amendment as post-trial detainees have under the Eighth Amendment); *Belcher v. Oliver,* 898 F.2d 32, 34 (4th Cir.1990) ("[T]he Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted *344 prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee."); *Mitchell v. Aluisi,* 872 F.2d 577, 581 (4th Cir.1989) ("A violation of the Eighth Amendment standard ... may be used, however, to determine a due process violation.") (citing *Whisenant v. Yuam,* 739 F.2d 160, 163 n. 4 (4th Cir.1984)).

**\*\*3** "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment" and a prison official must therefore have a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 302-303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Failure to provide adequate medical care to a detained individual rises to the level of a constitutional violation when there is "deliberate indifference" to an individual's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.") (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). In order to establish "deliberate indifference," the Appellants must show that the arresting or processing officers were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also that the officers "must also [have drawn] the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (defining "deliberate indifference").

In summary, in order to establish liability under Section 1983 based on a claim of inadequate medical care,

Appellants must show the officers had actual knowledge that Bell had an urgent medical need because of a known risk. Conduct that is merely negligent, or even reckless, is insufficient. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 (rejecting the notion that that the common law definition of "reckless" in civil cases meets the deliberate indifference standard).[4] For these reasons, "[i]f an officer fails to act in the face of an obvious risk of which he should have known, but did not, the officer has not violated the Eighth or Fourteenth Amendments." *Watkins v. City of Battle Creek,* 273 F.3d 682, 686 (6th Cir.2001) (citing *Farmer,* 511 U.S. at 837-838, 114 S.Ct. 1970).

In assessing whether these officers had the required level of awareness necessary to establish "deliberate indifference" to Bell's urgent medical needs, the Court must consider, based on the summary judgment record, whether Bell's need for medical attention was both "apparent and serious." *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir.1999). A medical need is "serious" if it is one that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir.2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.1999)).

have swallowed drugs, there is no evidence from which a fact finder could infer that they in fact knew that Bell had consumed cocaine or that Bell evidenced the need for medical attention.

**\*4** The Appellants claim that the evidence is sufficient to make the required showing for the purposes of surviving summary judgment when one considers Bell's age and the special protections that South Carolina law provides to juvenile detainees, but which Bell allegedly did not receive.[6] Whether Bell was properly treated as a juvenile under South Carolina law does not affect the constitutional standard by which the Appellees' conduct is to be judged; and Appellants still must show, even if Bell is considered a juvenile for the purposes of their constitutional claims, that the officers were deliberately indifferent to a known need for urgent medical attention.

The facts presented to the District Court, when viewed in the light most favorable to the Appellants, do not create a triable issue of fact concerning whether the arresting officers in fact *knew* that Bell was in need of urgent medical attention. For these reasons, the evidence did not sufficiently support the claim that the arresting officers violated Bell's constitutional rights.[7]

A.

Looking at the facts in the light most favorable to the Appellants, the evidence offered to support Appellants' claim does not support the inference that the arresting officers knew that Bell was in need of urgent medical attention as a result of cocaine consumption. It is undisputed **\*345** that the Officers did not see Bell ingest any cocaine and Bell did not have any tell-tale signs in or around his mouth of cocaine ingestion when the baggie was removed. Even if the substance inside the baggie were moist following its extraction from Bell's mouth, there was no indication, from residue on the outside of the baggie or otherwise, that the baggie had lost any of its contents. Importantly, Bell repeatedly and consistently denied swallowing any drugs, while admitting to drug use earlier in the day.[5] During the several hours that he was under police observation after his arrest, but before his collapse, Bell acted normally throughout his interactions with the officers without showing any of the behavioral symptoms associated with cocaine ingestion. While the arresting officers were rightfully concerned that Bell may

B.

With respect to Officer Brown, who processed and searched Bell at the Detention Center several hours after his vehicle was initially stopped, it is uncontested that Officer Brown searched Bell's mouth for drugs without finding anything and asked Bell if he had swallowed any drugs, which Bell again denied. He also observed that Bell was acting normally, without showing the signs or symptoms of cocaine ingestion. When Bell collapsed while taking a shower, Officer Brown acted immediately to provide him with medical attention.

Even assuming for purposes of summary judgment that Officer Brown knew that a baggie of crack-cocaine had been retrieved from Bell's mouth and that Officer **\*346** Holt had specifically told him to search Bell's mouth, the evidence remains insufficient to support the inference that Officer Brown *knew* that Bell was in need of urgent medical attention. Accordingly, the evidence is insufficient to create a triable issue of fact as to whether Officer Brown was "deliberatively indifferent."

## C.

Appellants base their claim against Al Cannon, the Sheriff of Charleston County, not on his actual involvement in the arrest or processing of Bell, but rather on his supervisory responsibilities. Under Section 1983, a supervisory official may be held liable in his personal capacity in certain circumstances for constitutional injuries inflicted by his subordinates if those actions were premised on a recognition that supervisory indifference or tacit approval of the misconduct could cause the constitutional injury. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). In this case, however, since we have found that none of the officers violated Bell's constitutional rights, there is no basis for Sheriff Cannon's liability under any theory.[8] Likewise, because we have found that none of the officers violated Bell's constitutional rights, there is no basis for the Appellants' claim against the Department itself.

## D.

**\*\*5** The District Court was also correct in concluding that the officers were entitled to qualified immunity for any constitutional violation they may have committed. When government officers are performing a discretionary function, they are entitled to a defense of qualified immunity unless their conduct clearly violates an established constitutional right that the officer reasonably would have known to exist. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (granting qualified immunity in the Section 1983 context). Whether or not a police officer is entitled to qualified immunity is a question of law for the court, and when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke,* 412 F.3d 553, 558 (4th Cir.2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.") (citing *Wilson v. Kittoe,* 337 F.3d 392, 397 (4th Cir.2003)).

In this case, as discussed above, none of the officers violated any of Bell's constitutional rights. Without any evidence demonstrating the officers had knowledge that Bell was in urgent need of medical care, the officers cannot have violated a clearly established constitutional right and are entitled to qualified immunity.

## IV. Conclusion

For the above reasons, we affirm the judgment of the District Court.

*AFFIRMED.*

**All Citations**

362 Fed.Appx. 340, 2010 WL 145134

## Footnotes

1. Although Officer Valentine was named as a defendant in the District Court and is included among the Appellees, the Appellants have not pressed their claim against Officer Valentine on appeal.
2. The evidence offered to support this contention is a statement in Officer Holt's supplemental arrest report that describes the cocaine in the baggie as moist. Officer Holt later testified, however, that it was the baggie that was moist, and the contents of the baggie became moist when exposed to the saliva on the outside after the baggie was removed from Bell's mouth.
3. Officer Holt contends that he told Officer Brown, the processing officer, that a plastic baggie of crack-cocaine had been removed from Bell's mouth, and that Bell could be hiding additional drugs in his mouth, behind his gold teeth. Officer Brown, however, denies receiving this information from Officer Holt.
4. The District Court remanded Appellants' claims under the South Carolina Torts Claims Act, S.C.Code Ann. §§ 15-78-10, *et seq.* The Act waives the state's immunity for losses "proximately caused by a tort of the State," *id.* at 15-78-50, and is not subject to the "deliberate indifference" standard applied to claims under Section 1983.
5. Appellants do not contend that the officers were "deliberately indifferent" based on their knowledge of his smoking the cocaine laced marijuana.
6. Specifically, Appellants allege that the Detention Center's own procedures prohibit juveniles from being admitted to the Detention Center if there is any doubt about their medical condition. Appellants also contend that under S.C.Code §

| | |
|---|---|
| | 63-19-810(B), Officer Holt was required to inform an authorized representative of the State Department of Juvenile Justice of Bell's arrest and location, and that Bell's parents were required to be notified that he was in custody under S.C.Code § 63-19-810(A), which also places any child under the age of seventeen within the jurisdiction of the South Carolina Family Court. |
| 7 | As Appellants did not raise the issue on appeal, we will not address the District Court's finding that the level of force used by the arresting officers to retrieve the baggie from Bell's mouth did not violate Bell's Fourth Amendment rights. |
| 8 | The District Court also correctly concluded that Sheriff Cannon cannot be held liable under Section 1983 in his official capacity. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a state nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Gulledge v. Smart,* 691 F.Supp. 947 (D.S.C.1988) *aff'd* 878 F.2d 379 (4th Cir.1989) (holding that, in South Carolina, sheriffs and deputies are state officials). |

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.