IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| *LaKrystal Coats*, as Personal Representative of the Estate of *Demetric Cowan*, | ) ) ) ) | C. A. No.: *1:17-cv-02930-TLW-SVH* |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON** |
| Ray Pope, in his individual capacity, FNU Nichols, in his individual capacity, FNU Cardarelli, in his individual capacity, FNU White, in his individual capacity, Gerald Brooks, in his official capacity as Chief of Police of the City of Greenwood, Sidney Montgomery, in his individual capacity, Roy Murray, in his individual capacity, Pamela Osborne, in her individual capacity, and Tony Davis, in his official capacity as Sheriff of Greenwood County, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **BEHALF OF DEFENDANTS MONTGOMERY, MURRAY, AND DAVIS** |
| Defendants. | ) | |

Defendants, Montgomery, Murray and Davis, filed their motion and memorandum in support of summary judgment on February 2, 2019. The Plaintiff filed a response on March 7, 2019. (The plaintiff's response references an internet research article and the report of James Aiken. Neither is admissible and neither is in the form of admissible evidence as required by the F.R.C.P. 56. The article is not admissible under the federal rules. (See Fed. R. Evid. 701, 703, 801 and 803). See also *Perry v. Jones,* 2016 WL 2747262, *Hinton v. McCabe,* 2018 WL 1542238 *and Solt v. Boeing,* 2018 WL 1583977. Further, it is noted that the report of Mr. Aiken contains statements and opinions that he is not qualified to make and his report is not a declaration made under penalty or perjury.)

The response filed by the Plaintiff makes reference to the traffic stop, events at the detention center and detailed facts, but the response of the Plaintiff fails to address the main issue raised by these Defendants in their motion and that is the question as to causation, and the question as to whether or not any earlier medical intervention would have prevented Cowan's death. The Plaintiff has identified no medical experts and has provided no expert testimony as to the critical issue of causation. Further, the issue of causation in this case is beyond the common knowledge and ordinary experience of a lay person, and expert testimony is required.

Cowan was taken to the Greenwood County Detention Center by a City of Greenwood police officer and he was signing documents in the booking area at 22:02:49. He appeared totally normal at that time, even using the ATM machine, and he was later placed in a holding cell at approximately 22:28:42. Inmate Cowan was moved from holding cell one to holding cell two for closer observation at 3:34:11 after his cellmate indicated that Cowan had thrown up. At approximately 3:34 am until approximately 4:13 am Cowan was observed and watched by a bodycam video. At 4:13 am EMS was called and Cowan was unresponsive. The date of death indicated is March 13, 2016 and the time of death is indicated at 04:17. (It should be noted that Daylight Savings Time started on March 13, 2016. These times are taken from the video footage from cameras mounted in the Detention Center.) See Exhibit A, Booking Video. The Plaintiff contends that Cowan was in the throes of a medical emergency on March 13, 2016, calling for emergency medical intervention. The response of the Plaintiff makes reference to Cowan being removed to a holding cell at 3:30 on March 13,

2016 for what the Plaintiff asserts to be "an acute medical crisis." Assuming those facts, for the record and for the purpose of this motion, the Plaintiff nevertheless fails to come forward with any evidence to create a genuine issue of material fact that any type of medical intervention at that time would have prevented Cowan's death.

## I.    THERE IS NO EVIDENCE TO SUPPORT THE CLAIM THAT EARLIER MEDICAL INTERVENTION WOULD HAVE PREVENTED COWAN'S DEATH.

A.    The uncontroverted evidence is that Cowan ingested a quantity of cocaine prior to being brought to the detention center, that he never requested medical care, that he never informed any detention officer that he had ingested cocaine, and that Cowan's death at or before 4:17 am on March 13, 2016 was due to and caused from drug toxicity (cocaine). See postmortem report, Exhibit C, to defendant's Memorandum in support of summary judgment. See death certificate, Exhibit E, to defendant's Memorandum in support of summary judgment.

The Plaintiff's memorandum includes a very detailed recitation of facts and references to depositions. Aside from reciting facts, however, the Plaintiff fails to point to any evidence to create a genuine issue of material fact that intervention at an earlier point in time and/or at 3:30 am on the morning of March 13, 2016 would have prevented Cowan's death. The Plaintiff does not present any evidence as to what type of medical intervention should have been done or that it would have been successful.

This is clearly a case where the causation requires expert medical evidence and testimony. The Plaintiff has come forward with no evidence whatsoever as to the treatment, the timing of intervention, the type of intervention, the options of treatment or what the

prognosis would be in this case. To the contrary, the Defendants actually have competent expert testimony and evidence that intervention when Cowan first exhibited signs and symptoms unfortunately would not have prevented his death.

The Plaintiff's memorandum makes reference to a single "uncommon" case study report published online on November 24, 2016 from the Institute of Forensic Science and Legal Medicine Ministry of National Security Jamaica and the Department of Forensic Medicine, AIIMS, BHOPAL, India. Respectfully, that article is not admissible evidence and it is not properly before the court. It does not provide conclusions applicable to the facts of this case nor is it proper opinion evidence to be considered at summary judgment or at trial. As is noted by the co-defendant, nothing in the article appears to make reference to what medical interventions and/or lifesaving measures can be productive after a body pack of cocaine has been ruptured. The simple conclusion appears to be "early intervention and detection of drug body packs in such cases could possibly save a life." That is hardly admissible evidence and it certainly does not meet the standard required of expert evidence or testimony.

> See *Carver v. Med. Soc'y of S.C.,* 286 S.C. 347, 350, 334 S.E.2d 125, 127 (Ct.App.1985).
>
> Negligence is not actionable unless it is a proximate cause of the injury complained of, and negligence may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the **800 injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of *most probably* resulted from the defendant's negligence. The reason
> for this rule is the highly technical nature of malpractice litigation. Since many malpractice suits involve ailments and treatments outside the realm of ordinary

> lay knowledge, expert testimony is generally necessary.

See *Baughman v. Am. Tel. & Tel.,* 306 S.C. 101, 111, 410 S.E.2d 537, 543 (1991);

> It is not sufficient for the expert to testify merely that the ailment might or could have resulted from the alleged cause. He must go further and testify that taking into consideration all the data it is his professional opinion that the result in question most probably came from the cause alleged. In determining whether particular evidence meets this test it is not necessary that the expert actually use the words "most probably." It is sufficient that the testimony is such "as to judicially impress that the opinion ... represents his professional judgment as to the most likely one among the possible causes."

*Baughman,* 306 S.C. at 111, 410 S.E.2d at 543 (citations omitted).

See also *Edwards v. Graham Cty. Jail,* No. 1:16-CV-315-FDW, 2017 WL 5894496, at

*6 (W.D.N.C. Nov. 29, 2017)

> To demonstrate this resulting injury, a deliberate indifference inmate who contends "that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994).* To withstand a motion for summary judgment, the non-moving party is required to forecast expert medical evidence in order to show proof of causation—that is, whether the alleged delay in treatment caused any injury. *See Alberson v. Norris,* 458 F.3d 762, 765-66 (8th Cir. 2006) ("Where the complaint [ asserting a Section 1 9 8 3 claim for inadequate medical treatment] involves treatment of a prison's sophisticated medical condition, expert testimony is required to show proof of causation."). Without expert testimony pertaining to causation, a layperson cannot determine the nature of Plaintiff's medical condition as it existed on September 19, 2015, the available treatments for it, the probable medical outcomes for each such treatment, or the detrimental effect, if any, of the alleged delay on those outcomes. An average juror has no basis in common knowledge or ordinary experience to determine whether delays in treatment or other factors caused or exacerbated the injury about which Plaintiff complains. It would be entirely speculative for a jury to decide that a delay in transporting Plaintiff for medical care earlier would have resulted in a different result.

See also *Martasin v. Hilton* Head Health System, *613 S.E.2d 795, 364 S.C. 430 (2005)*

The affidavit of Dr. Kim Collins specifically addresses the facts of this case and in her affidavit included as Exhibit B, Dr. Collins spells out her qualifications and experience and makes reference to the autopsy and the toxicology report and the other evidence she reviewed in this case. Her opinion as is stated in her affidavit is as follows:

> Most probably to a degree of reasonable medical certainty even if officers had summoned emergency assistance at or around 3:30 am on the morning of March 13, 2016 when Cowan first exhibited signs and symptoms of any type of medical issue, Mr. Cowan's death was most probably not preventable due to his having ingested cocaine as shown on the autopsy and by toxicology, which was not known to those on scene.

B.      The Plaintiff tries to suggest in her response that Cowan should have been refused at intake until a medical evaluation was done by a certified health care provider either at the jail or at a hospital. In her response, Plaintiff makes reference to pp. 93 - 108 of the deposition of James Aiken. Mr. Aiken, admittedly, is not a medical professional and he offers no opinion on the causation issue. (See page 96.)

> Q.    Alright. And now, in this case, you're certainly not offering any medical opinions, are you.
>
> A.    No, I'm not.
>
> Q.    You're not offering any medical opinions as to Mr. Cowan's cause of death or his time of death?
>
> A.    I do not have the expertise.
>
> Q.    And you're not offering any opinions as to what interventions may or may not
> have made a difference with Mr. Cowan in his outcome.

A.   Other than from an operational prospective.

Q.   That's right. You're not offering any opinion, sir, as to what any interventions would have made a difference or not made a difference in the outcome for Mr. Cowan, are you?

A.   I'm not offering any medical opinions regarding that. That is correct.

The report of James Aiken makes reference to the video recording and, upon information and belief, the video referred to in Aiken's report is from a body cam video starting at 2:55:31 and ending at 3:15:46. (Upon information and belief, the times reference in that body cam video are actually one hour behind due to Daylight Savings Time.) The Plaintiff's reference to the report of James Aiken again in no way provides competent evidence to suggest that medical intervention at an earlier point in time would have prevented Cowan's death. Further, the actual report of Mr. Aiken is not admissible evidence and it is not an affidavit for summary judgment purposes.

To the extent the Plaintiff contends that Cowan should have been seen in a hospital or emergency department or examined by a health care professional before booking, it is totally speculative at what difference, if any, that would have made. There is no testimony that would indicate that if in fact Cowan had been taken into an emergency department or to a hospital or examined by a nurse what he would have told about his medical history, and it is totally speculative to think he would have then said he had ingested cocaine. Likewise, there is absolutely no competent testimony or evidence to indicate that, in fact, if taken to a hospital or emergency department that Cowan would have been treated for any specific condition and/or what type of assessment or examination, if any, would have been done and what would have resulted from any such examination and/or assessment. Further, there is no evidence whatsoever that Cowan would have been either admitted or held at the hospital in

an emergency department for a period of time for observation.

The suggestion that prior to booking that Cowan should have been examined by a hospital and/or emergency department or health care professional leads to nothing more than speculation as to what he would have reported as his medical history and/or what treatment, if any, he would have had. There is simply no evidence in the record to give rise to an issue of fact that a medical evaluation prior to booking would have in any way changed the outcome and/or prevented Cowan's death due to drug toxicity from ingesting cocaine.

## II.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT TO GIVE RISE TO A CONSTITUTIONAL CLAIM FOR DELIBERATE INDIFFERENCE TO A DENIAL OF MEDICAL CARE IN THIS CASE AND UNDER THESE FACTS AND THESE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

On the morning of March 13, 2016 at 3:30 a.m. Cowan's behavior changed and officers became concerned about him; however, at that time they had no information with which to make a decision that he was suffering from a serious medical condition and/or that he had ingested a bag of cocaine in a sufficient amount to result in drug toxicity and death.

The actual recitation in the Plaintiff's response memorandum is a critical hindsight critique of the Defendants' actions; however, in real time there was little or no opportunity to determine how serious Cowan's condition would be or what was happening. Respectfully, this is not deliberate indifference giving rise to liability under Section 1983. Further, even a failure to carry out policies and procedures is not necessarily deliberate indifference although it may constitute negligence. See *Belcher v. Oliver,* 898 F.2d (1990).

## CONCLUSION

Summary judgment is not a disfavored procedural shortcut and in fact summary judgment is favored as a mechanism to secure the just, speeding and expensive determination of a case when it its proper use can avoid the cost of a trial. *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317 (4th Cir. 1995). Factual disputes to defeat summary judgment must be material and genuine and the district courts should ensure that both conditions are satisfied before a case goes to trial. In this case the Plaintiff bears the burden of showing that there is a genuine issue of material fact as to causation and as to whether or not earlier medical intervention could have prevented Cowan's death. The court cannot and should now have to engage in speculation as to the Plaintiff's evidence or theory of the case. Here the Plaintiff has failed to come forth with evidence to create a genuine issue of fact as to causation which is a necessary element of her case, and to the contrary the Defendants have come forth with evidence that precludes an issue of fact as to causation. Accordingly, Defendants respectfully submit that they are entitled to summary judgment.

                Respectively submitted,

                CHAPMAN, HARTER & HARTER, P.A.

                s/Russell W. Harter, Jr.
                Russell W. Harter, Jr.
                14 Lavinia Avenue
                P. O. Box 10224
                Greenville, SC 29603
                864/233-4500 (telephone)
                864/232-1717 (fax)
                rwhjr@chhlaw.net
                ATTORNEYS FOR MONTGOMERY,
                MURRAY AND DAVIS

Greenville, South Carolina
March 28, 2019