## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| LaKrystal Coats, as Personal Representative of the Estate of Demetric Cowan,<br><br>    Plaintiff,<br><br>v.<br><br>Ray Pope, in his individual capacity; FNU Nichols, in his individual capacity; FNU Cardarelli, in his individual capacity; FNU White, in his individual capacity; Gerald Brooks, in his official capacity as Chief of Police of the City of Greenwood; Sidney Montgomery, in his individual capacity; Roy Murray, in his individual capacity; Pamela Osborne, in her individual capacity; Tony Davis, in his official capacity as Sheriff of Greenwood County,<br><br>    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A #: 1:17-cv-02930-TLW-SVH<br><br><br><br><br>**MEMORANDUM IN SUPPORT OF THE RULE 59(e) MOTION OF DEFENDANT OSBORNE** |

This memorandum is filed in support of the Motion to Alter or Amend the Order of this Court dated October 30, 2019 (Order) (ECF No. 57), made by Defendant Pamela Osborne. The motion is made  pursuant to Rule 59(e), Fed. R. Civ. P.

## FACTS

This action stems from the death of Demetric Cowan (Cowan) on March 13, 2016, while he was a pretrial detainee in the Greenwood County Detention Center (GCDC).  The cause of death was determined to be drug toxicity from cocaine that was apparently ingested when he was stopped by City of Greenwood police officers the night before his death.

1

Officer Osborne accepts the facts recited in the Report and Recommendation (Report), ECF No. 45, and cited in the Order for the purposes of this motion, except as noted below.

## PROCEDURAL HISTORY

Officer Osborne filed a motion for summary judgment as to all claims. ECF No. 35. Coats filed a response in opposition to that motion. ECF No. 38. Officer Osborne then filed her reply. ECF No. 43.

The United States Magistrate Judge issued her Report and Recommendation (Report), in which she recommended that motions for summary judgment for all Defendants should be granted. ECF No. 45. Coats filed an objection to the Report, ECF No. 50, and this Defendant filed a reply to that objection. ECF No. 55.

The United States District Court Judge issued its Order, in which the Report was accepted in part and denied in part. The summary judgment motions of all Defendants were granted except as to GCDC Officers Montgomery, Murray and Osborne. ECF No. 57. As to them, their motions for summary judgment on state law claims were granted, but the motions were denied as to the Fourteenth Amendment claim.

Officer Osborne is now filing a motion to alter or amend that Order for the reasons below.

## APPLICABLE LAW

Federal Rule of Civil Procedure 59(e) governs motions to alter or amend a judgment but does not provide a standard under which a District Court may grant such motions. The Fourth Circuit found the following three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). It is on the third ground that this motion is made.

2

## ANALYSIS

Officer Osborne asks the Court to reconsider and amend the Order in this case to grant summary judgment in her favor  (1) on the wrongful death aspect of Plaintiff's 14th Amendment claim because there is no evidence that her acts or omissions caused or contributed to the death of Cowan; (2)  on the survival aspect of Plaintiff's 14th Amendment claim because there is no evidence that her acts or omissions caused or contributed to the pain and suffering of Cowan; (3) on Plaintiff's 14th Amendment claim because there is no evidence that she violated Cowan's constitutional rights when only her conduct is considered; and (4) on Plaintiff's 14th Amendment claim because  she is entitled to qualified immunity when  only her conduct is considered.

I.     OFFICER OSBORNE REQUESTS THE COURT TO RECONSIDER ITS RULING   AND DISMISS THE PLAINTIFF'S FOURTEENTH AMENDMENT WRONGFUL DEATH CLAIM.

The Plaintiff asserts wrongful death and survival claims in her Complaint. ECF No. 1. In her motion for summary judgment, Officer Osborne argued that she was entitled to the dismissal of the wrongful death component of the  Fourteenth Amendment claim because there is no evidence that her acts or inaction caused or contributed to Cowan's death.  There is, therefore, no issue for a jury to consider.  It is not clear that this issue was directly ruled upon in the Order. The current  motion asks the Court to reconsider its Order and to dismiss the Fourteenth Amendment wrongful death claim.

Plaintiff's First Cause of Action asserts a deprivation of due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. Complaint, ECF No. 1 at 6.  Specifically, it alleges that the Defendants were deliberately indifferent to Cowan's serious medical need and that, as a result, he suffered serious physical and emotional pain, *Id*. ¶ 37, and caused his death. *Id*. ¶ 38.  *See also* ¶ 60, which alleges that Cowan suffered grievous injury that caused his death

as a result of Defendants' conduct.[1]  It appears from the foregoing that the Plaintiff intends to make both federal survival and wrongful death claims.

Federal courts have recognized that wrongful death and survival actions can be brought pursuant to 42 U.S.C § 1983.[2] *See, e.g., Batiste v. Theriot,* 458 Fed.Appx. 351 (5th Cir. 2012) (applying wrongful death analysis to § 1983 claim for denial of medical care); *Iko v. Shreve,* 535 F.3d 225 (4th Cir. 2008) (§ 1983 survival and wrongful death action); *Dean v. Shirer,* 547 F.2d 227 (4th Cir. 1976); *Roberts v. Bodison,* 2015 WL 13215670 (D.S.C. 2015) (Report and Recommendation), adopted by 2015 WL 9581756 (D.S.C. 2015) (applying South Carolina wrongful death statute for § 1983 claim in matter of  first impression in the Fourth Circuit); *Hoover v. Trent,* 2008 WL 2992987 (D.S.C. 2008).

Officer Osborne sought summary judgment for the wrongful death aspect of the 14th amendment claim because the Plaintiff has no competent evidence that an earlier medical intervention would have prevented Cowan's death. ECF No. 35-1. Causation is an essential element for claims seeking relief based upon constitutional torts. *Formica v. Aylor,* 739 Fed.Appx. 745 (4th Cir. 2018) (no constitutional violation in claim for deliberate indifference to a serious medical need without proof the delay in treatment resulted in harm by exacerbating the

---

[1]  Paragraph 61 of the Complaint sets out Plaintiff's alleged damages.  It cites S.C. Code Ann. § 15-5-90, which is the survival statute.  The damages set out, however, are for wrongful death pursuant to S.C. Code Ann. § 15-51-40 and applicable case law.

[2] Section 1983 does not specifically articulate every action and remedy that may be brought and recovered under it, *Burnett v. Graham,* 468 U.S. 42, 47 (1984). When a claim under § 1983 requires further guidance than the section contains to be adjudicated, 42 U.S.C. § 1988 provides authorization for federal courts to use appropriate rules from the forum state court. In some cases, federal courts have applied wrongful death and survival principles in § 1983 cases. For example, because the survival of civil rights actions under § 1983 following the death of the plaintiff is not covered by federal law, federal courts must look to state law to determine whether the claim survives. *Robertson v. Wegmann,* 436 U.S. 584, 589 (1978) (wrongful death action did not survive because no person met the criteria to bring the action).  The issue reached the Supreme Court again in *Carlson v. Green,* 446 U.S. 14, (1980) (damages claim against federal

injury or prolonging pain); *Batiste v. Theriot,* 458 Fed.Appx. 351 (5th Cir. 2012) (estate of fleeing suspect who died from multidrug intoxication must prove the constitutional violation was the proximate cause of death); *Mata v. Saiz,* 427 F.3d 745 (10th Cir 2005) (inmate claim for medical delay requires proof the delay resulted in handicap, permanent loss or considerable pain); *Estate of Bradich v. City of Chicago,* 413 F.3d 688 (7th Cir. 2005) (plaintiff must prove that an earlier call for medical help could have saved his life); *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (detainee asserting a deliberate indifference claim "must produce evidence of a serious or significant physical injury <u>resulting from</u> the challenged conditions.") (emphasis added). *Edwards v. Graham Cty. Jail,* 2017 WL 5894496 at *6 (W.D.N.C. 2017) (absence of  medical evidence to show that a delay in treatment resulted in damage to his heart that he would not have suffered but for the delay was fatal to pretrial detainee's claim for deliberate indifference); *Watson v. Adams,* 2015 WL 1486869 (D.S.C. 2016) (summary judgment granted in § 1983 wrongful death action in absence of proof of causation). These cases involve 14th Amendment claims for delay in the provision of medical care to inmates. Many of them address wrongful death claims related to that delay. All require proof of causation of the alleged harm. In the wrongful death cases, the Plaintiff is required to show that the alleged constitutional violation caused the death.

The Plaintiff does not have any evidence to establish the necessary causal link for the wrongful death portion of this claim. Ordinarily causation would be established by expert testimony but she does not have an expert witness to do so. Instead, she attempted to remedy that

---

authorities brought by a mother on behalf of the estate of her deceased son survived, applying state court rules).

shortcoming by pointing to an internet article that addressed the possibility of saving lives of cocaine body packers  if there is early detection and medical intervention (ECF No. 38-23).  In her reply memorandum, Officer Osborne contended that the article was inadmissible, that it could not be made admissible at trial, and that it should therefore not be considered. ECF No. 43 at 3-4. She also pointed to an affidavit from Dr. Kim Collins, a board-certified forensic pathologist, who opined that death was most probably not preventable due to the ingested cocaine, as shown on the autopsy and by toxicology. ECF No. 44-2 at 4, 53.

The Magistrate Judge characterized this argument as "GCDC Officers contend Plaintiff cannot show a causal connection between their actions and the decedent's death and, thus, cannot show deliberate indifference."[3]   Report, ECF No. 45 at 17. She considered the article produced by the Plaintiff to attempt to establish causation and found that it was irrelevant and inadmissible (ECF No. 45 at 19-20). She also found that, even if it were admissible, it would not support Plaintiff's allegations.  *Id.* She contrasted that with the affidavit of Dr. Collins, which opined that, by the time Cowan was showing symptoms from ingesting the cocaine, it was most probably too late to save him. ECF No. 44-2 at 4, 53. The Magistrate Judge recommended summary judgment on behalf of all GCDC Defendants on the 14th Amendment claim (ECF No. 45 at 22).

This Court found that there is a dichotomy in the proof required to state a claim for delay in providing medical care between cases in which the need for medical care was obvious and those cases in which it was not.  Order, ECF No. 57 at 3-5, 9-11. For those cases in which the

---

[3]    The Defendants argued that the Plaintiff must demonstrate that the alleged deliberate indifference caused the death of Mr. Cowan.  The Magistrate Judge cited authority holding that a deliberate indifference claim must show evidence of a serious or significant physical injury <u>resulting</u> from the challenged conditions. ECF No. 45 at 17. A constitutional violation only occurs if the delay results in some substantial harm. *Id.* Thus, to avoid summary judgment, the

need for care was obvious, the Court found that the Plaintiff was not required to provide medical testimony to state a claim. *Id.* Thus, the Court found that there was sufficient evidence to state a cognizable claim for deliberate indifference based on the obviousness of Cowan's seizure symptoms. *Id.* at 10. However, the Order does not state what type of claim is made out - a survival claim, a wrongful death claim, or both. The Order indicates that a claim is stated but does not address whether the wrongful death aspect of the claim survives summary judgment and, if so, how it can proceed without evidence that any delay in seeking medical care caused Cowan's death.

The Plaintiff apparently agreed with Defendants' position that she needed to prove causation and offered the internet article as evidence. The Magistrate Judge ruled that the evidence was inadmissible and irrelevant and therefore did not establish the necessary proof of causation (ECF No. 45 at 19-20). The Court's Order did not rule on that finding and Officer Osborne requests a ruling on that issue.

The Court did address the affidavit from Dr. Collins and found that the "most probably" standard used in that opinion does not meet the level of certainty required to find that no triable issue of fact exists in determining whether the officers' conduct was the proximate cause of Cowan's death (ECF No. 57 at 10). Officer Osborne understands that ruling to mean that Dr. Collins' opinion would not be dispositive for summary judgment purposes if there was contrary evidence before the Court.[4] The affidavit was not submitted for that purpose, however. First, it was submitted to contrast with Plaintiff's total lack of evidence on this essential issue. Even if the affidavit had not been provided, the Plaintiff would still have a fatal flaw in her case. Second, the

---

Plaintiff must show that the delay in calling the EMS caused decedent substantial harm. *Id.* at 18.

[4] Officer Osborne is not certain about the nature of that ruling but believes that the opinions expressed in the affidavit would be admissible evidence at trial.

affidavit does provide evidence that, by the earliest time that the Court suggests Defendants could have been on notice of a serious medical need, it was most probably too late for him to survive, regardless of the medical attention he received. EMS No. 44-2 at 4. In light of this evidence, the Plaintiff is required by Rule 56 to demonstrate evidence that creates an issue of material fact on this point. The Plaintiff has failed to do so. On the record before the Court, there is no competent evidence that Cowan would have survived if medical services were sought earlier.

If this case is tried and the Plaintiff rests her case without presenting evidence that a delay in summoning EMS most probably was the cause, or a cause, of Cowan's death, Officer Osborne's motion for a directed verdict on the wrongful death claim should be granted. Certainly the jury cannot be left to speculate about whether the delay in calling EMS mattered. This is true whether the Defendants present Dr. Collins at trial or not. It is the Plaintiff's burden to show that the conduct in question caused the harm that is claimed and here, she cannot do so.

For those reasons, Officer Osborne asks this Court to amend its Order to grant summary judgment in her favor on the wrongful death claim because the Plaintiff cannot prove causation.

II.    OFFICER OSBORNE REQUESTS THE COURT TO RECONSIDER ITS RULING AND DISMISS THE PLAINTIFF'S FOURTEENTH AMENDMENT SURVIVAL CLAIM.

The Court found that there was sufficient evidence to state a cognizable claim for deliberate indifference based on the obviousness of Cowan's seizure symptoms. *Id.* at 10. The cases requiring proof of causation cited in Section I above apply to survival actions as well as wrongful death claims. For the reasons set out above, this claim should be dismissed because the Plaintiff has no evidence that earlier medical intervention could have lessened Cowan's pain and suffering. The Plaintiff also lacks a medical expert to inform the jury when or if Cowan was conscious when he was shaking or seizing.

Defendants Montgomery and Murray are also making a similar motion and Officer Osborne adopts by reference their excellent argument on this issue.

For those reasons, Officer Osborne asks this Court to amend its Order to grant summary judgment in her favor on the survival claim because the Plaintiff cannot prove causation.

III.   OFFICER OSBORNE REQUESTS THE COURT TO RECONSIDER ITS RULING AND DISMISS THE FOURTEENTH AMENDMENT CLAIM BECAUSE THERE IS NO EVIDENCE THAT SHE PERSONALLY VIOLATED COWAN'S CONSTITUTIONAL RIGHTS.

The Court found that "approximately forty-three (43) minutes transpired between the time Cowan began exhibiting serious medical issues (vomiting, delirium, inability to walk or talk and seizures) and the time GCDC Officers[5] activated EMS." ECF No. 57 at 11. It held that the facts create a jury question as to whether the GCDC Officers addressed Cowan's symptoms within a reasonable time frame. *Id*. Therefore, summary judgment was denied to the GCDC Defendants.[6] *Id*. Officer Osborne asks the Court to alter that ruling by granting summary judgment in her favor since she had not observed, and was not aware of, many of the factors upon which that ruling is based.

The Court's ruling treats Officer Osborne, Officer Murray and Sgt. Montgomery as a unit, designating them the "GCDC Officers". That should not have been done. In order to prevail, the Plaintiff must plead and prove a personal connection between a Defendant's actions and the denial of Cowan's constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). The three GCDC Officers cannot be considered as one, but their individual knowledge and

_____

[5] The Court referred to the Defendants Montgomery, Murray and Osborne as the GCDC Officers. ECF No. 57-1.

[6] The Court distinguishes the case of *Brown v. Middleton,* 362 F. App'x 340 (4th Cir. 2010) in finding that a jury issue exists in this case. ECF No. 57 at 11. However, *Brown* was cited by the City police defendants and not Officer Osborne. The Report cites *Brown* in addressing the liability of those officers and not the Detention Center defendants. ECF No. 45 at 14-16. Officer Osborne does not rely on Brown in her request for summary judgment.

conduct must be examined to determine whether each of them showed deliberate indifference to Cowan's serious medical needs in violation of his rights under the Fourteenth Amendment.

The facts upon which the Court relies in making its ruling are taken largely from the Report and are recited in the Order. ECF No. 57-at 6-8. Officer Osborne accepts those facts for the purposes of this motion except as indicated below.

There is an objective and a subjective test for deliberate indifference. *Id.* at 3. The objective component is met if the need is sufficiently serious; that is, if it has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Id.* The subjective component requires the Plaintiff to prove that Officer Osborne subjectively perceived facts from which to infer substantial risks to Cowan, that she did in fact draw that inference, and that she then disregarded the risk. *Id.* If an officer fails to act in the face of an obvious risk of which he should have known, but did not, the officer <u>has</u> <u>not</u> violated the Fourteenth Amendment. *Id.* at 3.

The Court concluded "that Coats presents a cognizable claim for deliberate indifference based on the obviousness of Cowan's seizure symptoms." *Id.* at 10. Officer Osborne submits that the Court's decision should be reversed because it impermissibly imputes knowledge to her that she did not have and that, when the test for deliberate indifference is applied to her, no reasonable fact-finder could find that she understood the seriousness of Cowan's medical condition and disregarded it.

The Plaintiff alleged and the Court cites Cowan's vomiting, inability to walk or stand, delirious look, inability to speak and seizures as evidence of an obvious need for medical care. *Id.* at 10. However, Officer Osborne did not have all of that information. The undisputed facts cited by the Court show that Cowan was booked at 10:07 p.m. on March 12, 2016, and his behavior was normal until 3:30 a.m on March 13, 2016. ECF No. 57 at 6. Around 3:30 a.m.,

Officer Murray told Cowan to stand up to be transferred to Holding Cell 2 and Cowan refused. *Id.* at 7. Cowan then crawled from Holding Cell 1 into Holding Cell 2 with a dazed look on his face. *Id.* Cowan told Officer Murray that he was high and had been using drugs all day. *Id.* Officer Osborne did not come to the booking area until around 3:45 a.m.[7] ECF No. 38-18 at 14. This timing is important because Officer Osborne was not aware of any of the earlier information or events recited in this paragraph as she evaluated Cowan's conduct. She could not compare his condition to the previous five and a half hours in which he had been essentially symptom free. She did not see Cowan crawl from Holding Cell 1 to Holding Cell 2 because that occurred 15 minutes before she entered the unit. ECF No. 57 at 7. She  could not know whether he could stand or not. She saw him stare at her but did  not note a delirious look on his face. ECF No. 38-18 at 6. Cowan did not speak to her but she had no basis to judge whether or not he could speak. Officer Osborne did not know about those events and they cannot form the basis to conclude that she ignored an obvious serious medical need.

Another factor relied upon the Court in its conclusion that the GCDC Defendants saw evidence of an obvious medical need was that Cowan was vomiting. ECF No. 57 at 10. There is no evidence in the record that Officer Osborne saw Cowan vomit. However, after his phone call, Inmate told Officer Osborne that Cowan had vomited in Holding Cell 1 and she later cleaned it up.  ECF No. 38-18 at 41-42; ECF No. 57 at 8. Also, when Officer Osborne and Sgt. Montgomery went into Cowan's cell to place him on his side, vomit fell from the corner of his mouth. ECF No. 57 at 8. There is no evidence from which to determine whether he vomited

---

[7] Officer Osborne had been in Unit I, providing a break for the officer assigned there. ECF No. 38-18 at 14. While in Unit I, she received a phone call from a woman concerned that she had not received a phone call from her husband after his arrest. *Id.* 14-15. Officer Osborne planned to allow the inmate to make a call when she returned to the booking area. That inmate turned out to be Cowan's cellmate (Inmate). *Id.* at 16.

more than once or if the drip from his mouth was residual. Regardless, the act of vomiting, apart from the events that occurred before, would not be so obvious as to inform Officer Osborne that Cowan had a need of medical care. The act of vomiting is common, rarely results in medical care for non-inmates, and certainly would not alert a correctional officer of a serious medical need. *See Myers v. Milbert,* 281 F.Supp.2d 859 (N.D.W.Va 2003) (vomiting, frequent bowel movements and burning in the chest and throat are not serious medical conditions sufficient to constitute deliberate indifference by corrections officers).

The Court also pointed to the obviousness of Cowan's seizure symptoms. Officer Osborne noted that Cowan was shaking with what appeared to be a seizure. ECF No. 38-18 at 20. She used that term because she is not a doctor and because he was shaking. *Id.* at 22. Shaking itself is not necessarily alarming, since it can result from such innocent causes as a virus or simply being cold. Officer Osborne, however, did not ignore it and asked Officer Murray what was wrong with Cowan and was told that he was detoxing. ECF No. 57 at 7. She was entitled under the law, and in fact did, accept that information from other officers as true. *U.S. v. Laughman,* 618 F.2d 1067, 1072 (4th Cir. 1980), *cert. den.* 447 U.S. 925 (1980) (officer can rely on knowledge of another officer to make an arrest). In this case, she trusted that Officer Murray and Sgt. Montgomery, who were aware of the information gathered at intake and who had observed Cowan for nearly six hours, were providing her accurate information. ECF No. 38-18 at 60. Further, Officer Osborne had only encountered a few detox situations and they did not require medical attention. ECF No. 38-18 at 102,103. Instead, they placed the person on a medical watch. *Id.* All of the symptoms that Officer Osborne observed were non-specific and were consistent with detoxing from alcohol. *See* Affidavit and Report of Dr. Kim Collins. ECF No. 44-2 at 53).

The Court also points out that there is no evidence in the record that the GCDC Officers had medical training or that they attempted CPR. ECF No. 57 at 11. Again, analysis of the conduct of those defendants becomes skewed when they are treated as a group rather than for their individual conduct. Officer Osborne is an employee of the  Greenwood County Detention Center and does not determine the training that she receives. Surely she cannot be personally liable for training deficiencies, if any, beyond her control. Similarly, she did not provide CPR because she thought her inability to find a pulse was because she was panicked, meaning her adrenaline was flowing.  ECF No. 38-18 at 50, 98.

Based on these factors, the need for medical care for Cowan was not obvious to Officer Osborne given her limited knowledge about Cowan's circumstances. It was certainly plausible that he was detoxing and did not need medical care at all.

Further, even if the objective prong of the test for deliberate indifference could be seen as giving rise to a jury question, the subjective prong cannot.  For a claim to survive summary judgment, there must be evidence that Officer Osborne subjectively perceived facts from which to infer substantial risks to Cowan, that she did in fact draw that inference, and that she then disregarded the risk. The Plaintiff cannot provide that proof because it simply is not true. Because Sgt. Montgomery and Officer Murray were familiar with Cowan and had observed him for hours since he was booked, she did not question the explanation that he was detoxing. ECF No. 38-18 at 23. She did not see a need to call EMS earlier because her shift commander knew the facts and it was his call to summon EMS. *Id.* at 60. She had no opinion on whether EMS should have been called earlier because she did not know the whole story about Cowan. *Id.* at 44. She was not concerned about going outside the chain of command and would have called EMS if she thought they were needed.  *Id.* at 59, 60, 66. There is no evidence that she drew the inference

from her observations and information provided to her that Cowan needed medical help and that she disregarded the need.

Further, Officer Osborne's conduct shows that she was not indifferent to Cowan's medical needs. When she first saw him, she inquired about his condition and received a response that she found satisfactory given the much greater knowledge of the other officers. *Id.* at 23, 59, 60. When she observed the possible seizures in his cell, she was the one who instituted measures to move him away from the wall so that he would not hit his head. ECF No. 57 at 7. When that was done, and she observed vomit come from his mouth, she was the one to see that Cowan was placed on his side rather than his back to prevent him from choking if he vomited again. *Id.* Also, when the vomit came out of his mouth, she went to get a wet towel so that his face could be cleaned and to try to get him to be more responsive. *Id.* at 8. She then stayed with Cowan while Sgt. Montgomery went to call Lt. Butler. *Id.* When she saw Cowan's stomach failing to rise and fall, she attempted to get a pulse and could not find one. *Id.* She called out to Officer Murray to call EMS. ECF No. 38-18 at 49. She continued to check Cowan's pulse, pat his face and to attempt to elicit a response. ECF No. 57 at 8.

The undisputed facts[8] show that Officer Osborne's conduct does not meet either the objective or the subjective test for deliberate indifference to a serious medical need. Under either test, the need for medical intervention for a serious medical need was not obvious to her. She deferred to the explanation of officers with more experience and who had observed Cowan for many hours when she was told that he was detoxing. There is no evidence in the record that she thought otherwise and, in fact, she testified that she would have overridden the chain of

---

[8] Most of the factual recitations are in the Report and Order and are either undisputed or viewed in the light most favorable to the Plaintiff. The remaining facts are shown by the body cam video. ECF No. 44-1. Conclusive photos and videos can entitle the defendant

command and called EMS herself if she ever thought Cowan had a serious need for help.  Her

conduct does not demonstrate deliberate indifference.

Officer Osborne is therefore entitled to summary judgment on Plaintiff's Fourteenth

Amendment claim because there is no evidence that she was deliberately indifferent to a known

serious medical need.

IV.    OFFICER OSBORNE REQUESTS THE COURT TO RECONSIDER ITS RULING
       AND DISMISS THE FOURTEENTH AMENDMENT CLAIM BASED UPON HER
       RIGHT TO QUALIFIED IMMUNITY.

The Court denied qualified immunity to the "GCDC Officers" because "Cowan's needs

were objectively serious and obvious enough that [they] were subjectively aware of the

seriousness and chose not to seek medical treatment immediately." ECF No. 57 at 13. The

Court's ruling treats Officer Osborne, Officer Murray and Sgt. Montgomery as a unit,

designating them the "GCDC Officers."  For purposes of qualified immunity, they must be

treated individually and their knowledge and conduct determined and compared to clearly

established law.  Officer Osborne asks the Court to alter that ruling by granting summary

judgment in her favor since (1) she had not observed, and was not aware of,  many of the factors

upon which that ruling is based and, (2) the applicable rule in this case was not clearly

established.

Officer Osborne was acting as a public official, in the course and scope of her

employment in the early morning hours of March 13, 2016.  The United States Supreme Court

has set forth objective standards for a qualified immunity defense and has provided specific

benchmarks to courts in determining when to protect public officials from undue interference

with their official duties.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In setting forth its

---

to summary judgment even if the plaintiff's testimony would otherwise create a factual dispute
for trial. *Scott v. Harris*, 550 U.S. 372 (2007).

guidelines, the Supreme Court ruled that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person should have known. *Id*. at 818. This immunity has been established to avoid "excessive disruption of government." *Id*. Moreover, this immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Additionally, the Fourth Circuit has found that this immunity protects officers from "bad guesses in gray areas," and it ensures that officers can only be liable "for transgressing bright lines." *Maciariello v. Sumner*, 973 F.3d 275, 298 (4th Cir. 1992).

When a court considers a qualified immunity claim, it must use an objective reasonableness" standard. *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991). "The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Id.* at 261 (*citing Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)). "If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *Id*. "The determination is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004). The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989). The defense is similarly available to detention center officers. *Hill v. Crum*, 727 F.3d 312 (4th Cir. 2013).

Finally, it is important to note that "though it focuses on the objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in

question." *See Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994) (citations omitted). "[U]sing this perspective limits the need for decision-makers to sort through conflicting versions of the "actual" facts, and allows them to focus instead on what the police officer reasonably perceived." *Id*.

"Qualified immunity protects governmental officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 134 S.Ct. 3, 4-5 (2013)(per curiam) (quoting *Pearson v Callahan*, 555 U.S. 223, 231 (2009)). It's purpose is to give "governmental officials breathing room to make reasonable but mistaken judgments." An official who violates the law is entitled to qualified immunity so long as " in light of clearly established law, [the official] could reasonably believe that [their] actions were lawful." *Williams v. Ozmint*, 716 F.3d 801, 805. (4th Cir. 2013.).

Qualified immunity requires a two step process to determine if an officer is entitled to a dismissal of the action. *Pearson v. Callahan,* 555 U.S. 223 (2009). The first prong considers whether the facts alleged show that the officer's conduct violated a constitutional right. *Id.*. The second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. Conduct violates clearly established law when the contours of the right are sufficiently clear that every reasonable official would understand that he was violating the right. *Ashcroft v. al-Kidd,* 536 U.S. 731 (2011). This does not require a case exactly on point but the existing authority must make the issue beyond debate. *Id.*

As to the first prong of the qualified immunity analysis, Officer Osborne submits that she has not been deliberately indifferent to the serious medical needs of Cowan for the reasons set out in Section III above. If that has been sufficiently established in that analysis, no further inquiry is needed.

If, however, there is a question as to whether Officer Osborne did violate a constitutional right, the next question is whether that right was clearly established at the time such that it would be clear to an objectively reasonable officer that the conduct violated that right.  The Court characterizes the question as "whether at the time of the incident it was clearly established that the Fourteenth Amendment forbids prison officials who observe an inmate who is sweating and breathing heavily, vomiting, incapable of speaking, standing or walking, and having seizures from delaying approximately 43 minutes in summoning medical care for that inmate."  ECF No. 57 at 12.   Again, that proposed question treats the three GCDC officers identically despite significant differences in their knowledge and experience with Cowan.  Officer Osborne did not know that Cowan was incapable of speaking, standing or walking since the conduct upon which that assertion is made occurred before she arrived in the unit. ECF No. 57 at 7.  She certainly could not have delayed summoning medical care for 43 minutes when she had not been in the unit for that long.  ECF No. 38-18 at 9. She was also uncertain that Cowan was having seizures, and therefore, described his mannerisms as being "like seizures." *Id.* at 20, 22. She had no way of knowing that the information that she received that Cowan was detoxing was incorrect and the person obligated to summon medical care was both present and more knowledgeable than she was about the facts surrounding Cowan's condition. *Id.* at 23, 59, 60. Officer Osborne submits that the proper question is whether at the time of the incident it was clearly established that the Fourteenth Amendment forbids detention center officers who observe an inmate who is sweating and breathing heavily, who has vomited, who has not spoken, stood or walked in her presence, who has seizure-like symptoms, and who has been told that the inmate is detoxing by credible detention center officers who had observed the inmate for five  and a half hours, was obligated to ignore the chain of command, and contact EMS herself.  Officer Osborne submits that the law under those circumstances was not clearly established.

18

Supreme Court "cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). An official action is protected by qualified immunity if the action in question has not previously been held unlawful and if, in the light of pre-existing law, the unlawfulness is not apparent. *Id.; see also, Malley, supra,* 475 U.S., at 344–345; *Mitchell, supra,* 472 U.S., at 528. Public officials must consider the possible relevance of legal principles established in analogous factual contexts. *McConnell v. Adams,* 829 F.2d 1319 (4th Cir. 1987). However, in cases where there is a legitimate question whether those principles extend to the particular case before the court or whether the particular case might constitute an exception to those principles, the court should sustain a qualified immunity defense. *Id.*

There is no controlling authority in the United States Supreme Court, the Fourth Circuit, on in the appellate courts of South Carolina that would tell Officer Osborne that her conduct in this matter was unconstitutional. For that reason alone, Officer Osborne is entitled to qualified immunity. Further, the authority from other jurisdictions cited in the Order is non-binding and does not provide clear guidance to officers in her situation. Those decisions are reviewed below and other distinguishing aspects are noted.

*Iko v. Shreve* is the only Fourth Circuit case cited by the Court. 535 F.3d 225 (4th Cir. 2008). Iko, an inmate in a Maryland state correctional facility, died after being forcibly removed from his cell and transferred to another cell by correctional officers. When Iko would not cooperate in being transferred to an observation cell, a seven-person extraction team sprayed down his cell multiple times with a pepper spray fogger, outfitted him with a spit mask, and handcuffed his arms behind his back. The officers did not remove the spit mask or

19

decontaminate him as required by policy.  In his new cell, Iko would not cooperate with the exchange of flex cuffs for his handcuffs and officers restrained him by putting pressure on his body for several minutes in order to make the exchange.  They then left him with his arms restrained behind his back, face down with the spit mask on, and in cuffs. They later discovered him dead in the cell.  The medical examiner determined that he died of asphyxia due to chemical irritation of his airways by the OC spray, by the facial mask placement, and due to compressional and positional mechanisms. Iko's estate filed a survival and wrongful death action against the officers pursuant to 42 U.S.C. § 1983 for deliberate indifference to his medical needs. The Court found that the officers were not entitled to qualified immunity.

Iko is distinguishable from the facts of this case and does not create clearly established law applicable to Officer Osborne.  The correctional officers were aware over several days that Iko was behaving erratically.   In the 28 minutes that Officer Osborne was  in the same unit with Cowan, she did not have the benefit of knowledge about his background and earlier conduct.  In addition, the officers in Iko were directly responsible for his physical distress and therefore knew what was involved.  In contrast, Officer Osborne had little contact with Cowan until 4:01 a.m., when she initiated measures to insure his safety, and did not know the cause of his apparent issues.  Further, Officer Osborne did not know that Cowan was in need of immediate emergency medical care because she relied on information provided by other detention center employees who had more information and gave a reasonable explanation for Cowan's conduct. Unlike the officers in Iko, Officer Osborne made an effort to learn about his condition and made efforts to assist him while he was detoxing. The cases are similar only at the broadest level of analysis, and Iko  does not define the right in question with sufficient specificity to make it clearly established law applicable to this case.  See  Wilson v. Layne, 526 U.S. 603 (1999).

20

Similarly, the nonbinding authority cited by the Court is not sufficiently like the present case to inform Office Osborne that her failure to call EMS would violate Cowan's constitutional rights. In many of the cases, the correctional officers were present at the event that caused the physical distress and were aware of its origin. This is in contrast to Officer Osborne who encountered Cowan hours after he arrived at the Detention Center and who lacked the context to have seen him deteriorate physically while there. Also, in the cases cited, there were no officers with more knowledge about the inmate's condition who offered a plausible explanation for his behavior that did not require medical care. That is an essential distinction from the current case. Those cases can also be distinguished on the other grounds discussed below.

The Court cites *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) because the court in that case denied qualified immunity to a correctional officer who, after noticing that an inmate was not breathing, stood over him in his prison cell for seven minutes without giving him CPR. The Court found that an officer who is trained in CPR and does not use it when needed can be liable under § 1983 for deliberate indifference to a medical need. The present case is distinguishable, however, because Officer Osborne did not refrain from providing assistance to Cowan as set out above. See Section III of this memorandum for a discussion of the measures taken by Officer Osborne on Cowan's behalf. In addition, Officer Osborne indicated that she did not perform CPR because she believed that her inability to find a pulse was only because she was upset, and therefore thought that CPR was unnecessary. ECF No. 38-18 at 50. Nonetheless, she initiated calling EMS and attended to Cowan until they arrived. As an additional matter, *McRaven* does find that an officer can rely on information or opinions of others in determining a course of action, as Officer Osborne did when she accepted that Cowan was detoxing.

The Court also cites the *Estate of Bradich v. City of Chicago*, 413 F.3d 688, 691-92 (7th Cir. 2005) in which the Court denied qualified immunity to officers who allegedly delayed ten

minutes in calling for help after discovering that a prisoner had hanged himself. Further, one officer knew CPR but did not use it. That case is distinguishable from the one before this Court. In *Bradich*, the Court noted that the timeline was unreliable and that further evidence may vindicate the officers. Qualified immunity was denied because there were factual disputes at that time. In contrast, here, there are no material facts in dispute and the timeline is clear from the body cam and the hall camera. Also, unlike the officers in *Bradich,* Officer Osborne acted immediately to have EMS activated when she realized that Cowan had a serious medical need. Further, the officers in *Bradich* knew exactly what had caused his medical condition and that emergency measures were necessary. Officer Osborne did not have the luxury of that kind of information and, in fact, had knowledgeable officers telling her that Cowan's apparent distress was due to his detoxing that did not require medical intervention. Finally, this Defendant submits that *Bradich* cannot create clearly established law when other courts have refused to follow it. *See Arenas v. Calhoun*, 922 F.3d 616 (5th Cir. 2019) (holding that a prison officer was not deliberately indifferent because he delayed in entering the cell of an inmate using a bed sheet as a noose, *citing Rich v. City of Mayfield Heights*, 955 F.2d 1092 (6th Cir. 1992) (no constitutional violation for failure to immediately provide aid when medical care was summoned promptly); *Goode v. Berlanga*, 646 Fed.Appx. 427 (6th Cir. 2016) (correctional officer who waited five to seven minutes to check on an inmate who died of heroin intoxication was not deliberately indifferent).

In *Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005), the Court denied qualified immunity to officers who beat a suspect, observed him in significant physical distress, and made no attempt to summon medical care until six minutes later. The Court denied qualified immunity because it found the right to medical care was clearly established. However, as this Court has noted, that is too broad of a statement of the issue. It ignores the factual nuances that

separate cases and inform correctional officers.   In addition, the officers in that case knew why the inmate was in distress because they had allegedly caused it.  In contrast, Officer Osborne had no background information with which to evaluate the cause or serious nature of Cowan's condition.

Finally, a  number of courts have declined to follow or have distinguished *Owensby*.  In *Batiste v. Theriot*, 458 Fed.Appx. 351 (5th Cir. 2012), a fleeing suspect died after a foot chase and tasing.  After the suspect was tased, deputies called for an ambulance, which took him to the medical center.   The suspect died of multi-drug intoxication.  The Court of Appeals ruled that the deputies were entitled to qualified immunity on the claim for denial of medical care because they never thought there was a serious medical emergency, just like the situation presented by Officer Osborne.   The Fourth Circuit also declined to follow the analysis in *Owensby*.   In *Waybright v. Frederick County, Marilyn M.D.*, 528 F.3d 199 (4th Cir. 2008),  a recruit for the fire department died during physical training.  The Court of Appeals found that the supervisor of the fire department recruits did not violate substantive due process because there was no evidence that he knew that the decedent was in danger.  Although in a factually different context from this case, the Court expressly rejected the reasoning used in *Owensby*.

In *Tlamka v. Serrell*, 244 F.3d 628, 633-34 (8th Cir. 2001), the Court denied qualified immunity to officers who delayed ten minutes before providing CPR or other medical assistance to an inmate who they observed having a heart attack in the state prison yard.  The District Court granted summary judgment for all defendants because the law was not clearly established.  The Court of Appeals reversed because it found that there were issues of fact.  Here, in contrast, the facts are well-established. The Court also found that it was well settled that an <u>intentional</u> delay in obtaining medical care for an inmate could be a violation.  That is does not fit the conduct of

Officer Osborne, who neither appreciated the serious medical need nor intentionally withheld medical care.

The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact or a combination of the two. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Where judges disagree on a constitutional question, it is unfair to hold defendants liable for choosing the losing side of the controversy. *Id.* at 245. Here, there is no controlling authority that informed Officer Osborne what to do in a tense and rapidly changing situation. The non-binding authorities cited from other jurisdictions offer little guidance and have been questioned by other courts. It is only when the constitutional right is viewed at an impermissibly broad level that any theme can be discerned and, at that broad level, it offers no guidance to officers in the field. Even in this case, the Magistrate Judge recommended granting qualified immunity to Officer Osborne and the other defendants, while this Court declined to do so. Well-trained judges in these cases, with the luxury of time and hindsight, have not provided a test that defines the application of this constitutional right with sufficient factual clarity that it provided clear guidance to Officer Osborne under the facts confronting her. Qualified immunity is supposed to protect an officer from suit and liability in that case.

From the undisputed fact in this case, a reasonably well-trained correctional officer in Officer Osborne's position could have believed that her conduct was reasonable and did not contravene clearly established law. She was not plainly incompetent and did not knowingly violate the law, but acted in a reasonable manner in the good faith discharge of her duties. For these reasons, Officer Osborne submits that the Court should alter its Order and grant her summary judgment on the basis of qualified immunity.

## **CONCLUSION**

For the reasons above, Officer Osborne respectfully asks the Court to reconsider and amend the Order to grant her summary judgment on Plaintiff's 14th Amendment claims.

By: *s/ David L. Morrison*_____
David L. Morrison (Fed. #3581)
7453 Irmo Drive, Suite B
Columbia, South Carolina 29212
Phone:  (803) 661-6285
Fax:      (803) 661-6289
E-mail:  david@dmorrison-law.com
***Attorneys for Defendant Osborne***

Columbia, South Carolina

November 26, 2019